UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 1:12-cr-00160-JAW-2 |
| | ) |
| RODNEY RUSSELL, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Rodney Russell has filed four motions: (1) a motion to dismiss (ECF No. 144); (2) a motion to suppress (ECF No. 145); (3) a motion for discovery/motion to reveal (ECF No. 146); and (4) a motion to sever (ECF No. 147). The court referred all four motions and I have elected to address all four motions under 28 U.S.C. § 636(b)(1)(B), even though the discovery and severance motions are not enumerated under § 636(b)(1)(A), and thus are pretrial motions not requiring proposed findings of fact and a recommended decision and could be addressed under Fed. R. Crim. P. 59(a). However, the motions are interrelated and should be addressed as a group. The motion to dismiss and the motion to suppress require proposed findings and a recommendation. I now recommend that the court adopt my proposed findings and deny all four motions.

**PROCEDURAL BACKGROUND**

Two of the motions at issue concern out-of-court, photo-identification statements made by a cooperating witness. Pursuant to Rule 15, the court ordered that the witness, Martin Roblero, appear for a deposition because of his status as an illegal immigrant subject to deportation. (Order, ECF No. 114; Order Overruling Obj. to Order Regarding Deposition, ECF No. 142.) Mr. Roblero appeared in court for deposition on May 14, 2013. Chief Judge John Woodcock presided at the deposition. Because of the Rule 15 deposition, Roblero was available

for cross-examination concerning his out-of-court statements. (The parties have not indicated whether Roblero made an in-court identification of the defendants and Russell does not challenge any in-court identification in his motion to suppress.) Russell's current motions must be understood in light of the fact that the defendant has already had one opportunity to cross-examine Roblero and the transcript excerpts referenced in both the motion and the response arose in the context of that deposition.

Russell filed his four pending motions on May 20, 2013. Following its review of Russell's motions, the United States filed a motion for an order directing that Russell file motions that comply with Local Rule 147(a) (ECF No. 150), complaining that the motions were so terse and devoid of legal citations that it was impossible to ascertain the gist of the defendant's arguments. Following a hearing on that motion, Judge Woodcock ordered the defendant to file a supplemental memorandum directed at the motion to suppress, the motion for discovery, and the motion to sever. (Order of June 3, 2013, ECF No. 154.) The United States responded to the motion to dismiss without any further supplementation. (Response to Mot. to Dismiss, ECF No. 157.) The defendant filed his supplemental memorandum in support of the motion to suppress only. (Def.'s Supplemental Mem., ECF No. 160.) Although the defendant makes reference to certain pages of the Roblero deposition, he did not attach a deposition transcript or any transcript excerpts. The United States then responded separately to the motion to sever and the motion for discovery (Response to Mot. to Sever and Mot. for Discovery, ECF No. 161), as well as to the motion to suppress (Response to Mot. to Suppress, ECF No. 162). No replies have been filed. In support of its opposition to the motion to suppress the pretrial identification made by Martin Roblero, the United States filed six exhibits, including excerpts from the deposition of Martin Roblero. (ECF No. 162-6.) The Government's excerpts do not

include the deposition transcript pages cited in Russell's supplemental memorandum. Russell's counsel did not file any exhibits or affidavits in support of Russell's motions.

**PROPOSED FINDINGS OF FACT**

I propose that the court adopt the following findings of fact, without convening an evidentiary hearing. "[T]he decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court." United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010). A hearing on a motion to suppress is not available as a presumptive right. United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. . . . Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (citations omitted); see also United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013). The defendant has a burden of setting forth "sufficiently definite, specific, detailed, and nonconjectural" facts to demonstrate "that a substantial claim is presented." United States v. Calderon, 77 F.3d 6, 9 (1st Cir. 1996).

The circumstances of Mr. Roblero's out-of-court identification statements do not appear to be in dispute in this case. Nor has Russell requested an evidentiary hearing. Rather, Russell has merely argued inferences that might be drawn from Roblero's deposition testimony. The Supreme Court has held that the Due Process Clause does not require pretrial hearings whenever a criminal defendant challenges the reliability of identification evidence because criminal juries are equal to the task of assessing the reliability of identification evidence with the aid of cross-examination, court instruction, and attorney closing argument. Watkins v. Sowders, 449 U.S. 341, 347-49 (1981). In fact, these attributes of the criminal jury trial satisfy due process except

in exceptional circumstances.  Id.; see also United States v. Daily, 488 F.3d 796, 802-803 (8th Cir. 2007) (upholding denial of a pretrial hearing and collecting cases upholding the denial of a pretrial hearing where there was adequate opportunity to cross-examine the witness concerning out-of-court and in-court identifications).  Only in exceptional cases is it necessary to address the admissibility of identification evidence outside the presence of the jury.  Watkins, 449 U.S. at 349.  This is not such a case for reasons that are made apparent by the overarching circumstances, which I now describe.

As part of an investigation into a marijuana grow located in Township 37 of Washington County, Maine, investigators identified a witness, Martin Roblero, through DNA found on evidence left at the scene.  (See MDEA Report, ¶¶16-17, ECF No. 162-1.)  Somewhere between one and two years passed between the 2009 raid on the grow and the apprehension of Roblero in 2011.  Attorney Virginia Villa was assigned to represent Roblero.  (Id. ¶ 1.)  During a proffer interview in October 2011, Roblero was, initially, not candid with the officers and the officers stopped the interview, explaining to him that the DNA evidence indicated he was not being truthful about his involvement at the grow site.  (Id. ¶ 16.)  Roblero then related detailed information about the grow, how he came to work there, and what his duties were.  (Id. ¶¶ 21-24.)  Roblero also identified by name four men who worked at or were otherwise associated with the grow.  These were "Moises," "Rod," "Scott," and "the boss" or "owner."  (Id. ¶¶ 22, 26.)  Roblero described Rod and Scott by indicating that "[one] was skinny and [one] was short and fat."  (Id. at ¶ 22.)  Among other facts, he explained that he worked over several days with Rod and Scott, whom he described as the two Americans who were present and in charge of the operation.  (Id. ¶¶ 22-23.)

Near the end of the interview, Roblero was handed a book of photographs. (Id. ¶ 52.) In this book were 36 photographs, although only 34 were of people. (ECF Nos. 162-2, 162-3, 162-4, and 162-5 contain photographs presented to Roblero.) The photographs were numbered on their margins 001 through 025 and 100 through 110 (the last photo of a person or persons was number 108[1]). Of the 34 photographs of individuals, Defendant Russell appeared in four.

Roblero was asked if he recognized any of the individuals pictured. Of the 34 photos, Roblero identified individuals depicted in five. (Id. ¶ 52.) Those five were the photographs numbered 005, 009, 021, 102, and 104. (Id.) Of these five, two (photos 009 and 102) depicted Defendant Russell. When shown these two photos, Roblero responded that the person was "Rod." Roblero identified the others as "main guy who owns everything" (005), himself (021), and "Scott" (104). (Id. ¶¶ 52-53.) According to the AUSA, Roblero did not identify Russell in two other photographs (100 and 101), although Russell was depicted in them. (Response to Mot. to Suppress at 3, n.1.)

At his May 14, 2013, deposition, Roblero testified that he received an immunity agreement from the Government in exchange for his testimony. (Roblero Dep. at 20.) During his deposition, he referred to running from the scene with Scott and Rod and a group of Mexicans. (Id. at 56.) He indicated that he was shown a group of photographs in a book of several pages and recalled seeing "maybe six photographs." (Id. at 96.) He recalled being asked, "Who are the people in the photos?" (Id.) He said he remembered three or four of the photographs, no more than that. (Id. at 97.)

In his supplemental memorandum, Russell asserts in conclusory fashion that Roblero lied repeatedly under governmental questioning, citing eleven pages of Roblero's deposition. Counsel further argues that Roblero's identification is "marred by [his] level of uncertainty and

---

[1]    This numbering system is not uniformly apparent on the exhibits attached to ECF No. 162.

length of the time lapse between the alleged crime and the alleged identification process." (Def.'s Supplemental Mem. at 3.)  However, Russell did not file any excerpts of the Roblero deposition transcript and filed no reply challenging the United States' factual presentation describing the identification process.  Consequently, the foregoing proposed findings are based exclusively on the Government's submissions, including its narrative of what transpired, the underlying Maine Drug Enforcement Agency report (ECF No. 162-1), the four photo book logs (ECF Nos. 162-2 through 162-5), and the previously referenced limited deposition excerpts (ECF No. 162-6).

## DISCUSSION

For reasons that follow, I recommend that the court deny Russell's motions without a hearing.  Of the four motions, only the motion to suppress presents even a colorable basis for holding a hearing.  However, as to that motion, the issue presented, a matter of an out-of-court identification, has already been explored at Mr. Roblero's Rule 15 deposition.   The issues that Russell now raises about Roblero's reliability are issues of weight, not issues of admissibility.  Russell fails to demonstrate the existence of facts that, if credited, would justify this court's suppression of Roblero's out-of-court photo-identification statements on the ground that they are unreliable.

**A.      The Motion to Dismiss (ECF No. 144)**

Russell has moved to dismiss the indictment on the ground that it was obtained based on the perjured testimony of Martin Roblero. (Mot. to Dismiss at 1.)  The Government maintains that an attack on the credibility of a single government witness does not warrant dismissal of the indictment.  (Response to Mot. to Dismiss at 1.)  The Government is correct.

6

Once a legally constituted grand jury has returned an indictment, the defendant cannot bring a pretrial preliminary challenge to that indictment on the ground that the evidence is inadequate to support a conviction. United States v. Maceo, 873 F.2d 1, 2-3 (1st Cir. 1989). The matter must be resolved at a trial on the merits. Id. Russell is attempting to have the charges against him dismissed solely on the basis that any testimony offered by Martin Roblero is not worthy of belief. This court cannot second guess the actions of the grand jury based on credibility determinations.

An indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The grand jury is not convened to weigh and assess guilt or the merit of a suspect's defenses and "it has always been thought sufficient" that the grand jury should "hear only the prosecutor's side." United States v. Williams, 504 U.S. 36, 51 (1992). The Supreme Court has consistently refrained from intruding into the grand jury's operations in relation to "the grand jury's evidence-taking process." Id. at 50 (citing precedent refusing to impose an exclusionary rule for evidence derived from a violation of the Fourth Amendment or to impose a hearsay rule on an institution that allows lay persons to fulfill their duties free of technical evidentiary rules). Dismissal of an indictment is restricted to "extremely limited circumstances," Whitehouse v. United States Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995), and "'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard," Williams, 504 U.S. at 54 (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988)). See also United States v. Cameron, 662 F. Supp. 2d 177, 180 (D. Me. 2009). The record in this case does not depict the sort of extremely limited circumstances

that would invite dismissal of a grand jury indictment and for that reason I recommend that the court deny the motion to dismiss.

**B.      The Motion to Suppress Out-of-Court Identification (ECF No. 145)**

Russell contends that the photo array constructed by the police was overly suggestive in violation of due process. (Def.'s Supplemental Mem. at 1.) Identification evidence—identifications of a defendant made by a witness before trial or in the courtroom—should be suppressed as a matter of due process only in extraordinary cases. United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003). Out-of-court identification evidence routinely is admitted in federal courts. See Fed. R. Evid. 801(d)(1)(C). When identification evidence is suppressed, it is "primarily to avoid an unfair trial." United States v. Bouthot, 878 F.2d 1506, 1516 (1st Cir. 1989).

An out-of-court identification based on a photo array must be suppressed as a matter of due process "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." United States v. Holliday, 457 F.3d 121, 125 (1st Cir. 2006) (quoting Neil v. Biggers, 409 U.S. 188, 197 (1972)). When the conviction is "based on eyewitness identification at trial following a pretrial identification by photograph," a constitutional basis for exclusion of the in-court identification exists only if the "very substantial likelihood of misidentification" was "irreparable," despite the defendant's opportunity to cross-examine the witness about the accuracy of the identification. See Simmons v. United States, 390 U.S. 377, 384 (1968).

The United States Supreme Court has very recently revisited the issue of out-of-court identifications and reaffirmed that the analysis of whether eye-witness identifications should be excluded because of due process considerations involves a two-part test. First the court should

8

determine whether the police used a "procedure [that] was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012) (quoting Simmons, 390 U.S. at 384-385)).  Second, if there was impermissible suggestiveness, then the court must "assess on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" Id. (quoting Biggers, 409 U.S. at 201).  Ultimately, the court's role is "to decide whether the identification itself was reliable under the totality of the circumstances." Henderson, 320 F.3d at 100 (internal quotation marks and citations omitted).

In this case Russell argues that the police process was unnecessarily suggestive because of three factors:  (1) only six photographs were shown and four of those were of individuals involved in the case; (2) Roblero would have done whatever the police wanted him to do;  and (3) the police officer commented on each photo prior to showing the photo to Roblero.  (Motion to Suppress at 2-3.)  Russell provides no evidentiary support for these claims other than the previously noted page references regarding "lies" within Roblero's deposition.  The evidentiary showing by the Government in connection with this motion is that Roblero was shown a photo book containing 36 total images with 34 of those images showing individuals and two showing buildings.  It is true that Roblero testified at his deposition that he did not remember how many photographs he was shown, but that he thought it may be around six.  There is no reason to dispute the assertion that he was shown a photo book as described by the Government because Roblero agrees that the photos were in a book.  Moreover, the number of pictures he was able to identify was five and, thus, his memory of what he was shown might have been clouded by the number of photographs for which he was able to provide identification testimony.  The photos he

identified of Rodney Russell consisted of a driver's license photo (photo 9) and one candid photo (photo 102).

There is nothing in the record evidence that suggests that the interviewing agents suggested to Roblero which photos he should select or otherwise made any inappropriate comments. It is worth noting that Roblero's federal defender was present during the interview and her presence certainly undercuts any inference that the officers coached or cajoled Roblero into making an identification. Had the federal defender anything to add regarding suggestive comments made by the law enforcement officers, Roblero's counsel would certainly have included an affidavit from her or requested her presence at an evidentiary hearing. Moreover, Roblero's deposition testimony was that he was asked, "Who are the people in the photos?" That is hardly a suggestive question. There was nothing suggestive about this procedure that I can discern.

Even if the procedure had been suggestive, the inquiry would not end there. The court would still need to find a substantial likelihood of misidentification. Russell's suggestion that Roblero "lied" and that his identification is therefore unreliable is a bit of a non sequitor. Clearly, Roblero made certain prior inconsistent statements about his involvement in this marijuana grow. Ultimately, a jury will make a determination about the reason he may have lied and the truthfulness of his testimony under oath. However, in terms of the inherent reliability of his identification, "Rod" was not a person with whom Roblero claims to have had a one-time encounter. Roblero traveled with the defendant, lived in a dorm near his, and took directions from him. This evidence suggests reliability rather than unreliability. If Roblero is wrong in his identification, then it is more likely that his misidentification is the product of perjury, not the product of an unnecessarily suggestive identification procedure. The lapse of time also has

nothing to do with the reliability of Roblero's identification in these circumstances where Roblero's contact with "Rod" lasted for longer than a few minutes or hours. There is no basis to conclude that the identification was inherently unreliable unless one concludes that Roblero's testimony is unreliable in its entirety and these events simply did not happen as he described. Such a finding would be beyond the purview of a motion to suppress an out-of-court identification. The motion to suppress should be denied without a hearing. Nothing in Russell's presentation indicates that he has a substantial claim of misidentification based on the use of an unnecessarily suggestive photo-identification procedure.

C.  **The Motion for Discovery (ECF No. 146)**

Although docketed as a motion for discovery, the true nature of this motion is that it is a motion to reveal the identification of confidential informants. According to Russell, he has learned that "the Government has relied on the use of at least two confidential informants." (Motion for Discovery at 1.) Russell does not explain what these confidential informants told the Government or why their identities should be discoverable. The Government says "it did not employ informants to build the case against the defendant." (Response to Mot. to Sever and Mot. for Discovery at 3, ¶ 9.) Russell provides no further information for the court.

Under First Circuit precedent, "when the Government informant is not an actual participant or a witness to the offense, disclosure is required only in those exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety." United States v. Tzannos, 460 F.3d 128, 139 (1st Cir. 2006) (quoting United States v. Martinez, 922 F.2d 914, 921 (1st Cir. 1991)). Such a circumstance may exist if disclosure of the informant's identity "is vital to the proper preparation and

11

presentation" of a defense.  United States v. Perez, 299 F.3d 1, 4 (1st Cir. 2002).  The defendant's burden in this regard is heavy.  United States v. Cartagena, 593 F.3d 104, 113 (1st Cir. 2010).

Needless to say, the showing made in this case does not come close to meeting the standard.  There simply is not even the suggestion of a factual controversy concerning informants.  It is not even clear whether there actually are two confidential informants in play in this case.  The motion must be denied.

**D.     The Motion to Sever (ECF No. 147)**

Russell has moved to sever the charges against him from the charges against his co-defendants, alleging that he *might* be prejudiced by the introduction of evidence against other defendants and that the other defendants *might* provide exculpatory evidence for Russell. (Motion to Sever at 1.)  Russell offers no factual predicates regarding the potential exculpatory evidence and his presentation as to the allegedly prejudicial evidence is limited to the allegation that "the perjured testimony of Martin Roblero supports that the Government may present evidence exclusively against some defendants which would have a tendency to prejudice a jury against defendant Russell."  (Id.)  He has not made the requisite showing to support severance of the charges against him from the co-defendants.

Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . ., the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The movant bears the burden of making a showing of prejudice, United States v. Tracy, 989 F.2d 1279, 1283 (1st Cir. 1993), and "the district court enjoys wide latitude" when making its decision, United States v. Houle, 237 F.3d 71, 75 (1st Cir. 2001).  The court must be mindful to

avoid "depriv[ing] defendant of a fair trial, resulting in a miscarriage of justice." Id. (quoting United States v. Tejeda, 974 F.2d 210, 219 (1st Cir. 1992)). Generally, a strong showing of prejudice is required. Russell has not made a strong showing and the motion should be summarily denied.

## CONCLUSION

Based upon the foregoing, I recommend that the court deny all four of Russell's motions.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 5, 2013                              /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge