UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW-2 |
| | ) | |
| RODNEY W. RUSSELL | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTION AND MOTION FOR NEW TRIAL**

Following his convictions for a series of federal crimes, the Defendant moves to vacate the convictions and for a new trial on the ground that the Court allowed evidence of four prior convictions for false statements to be admitted for impeachment purposes at trial, and two of those convictions were later overturned on appeal. The Court denies the motions because the fact of the convictions and the fact that they were on appeal were properly admissible under Federal Rule of Evidence 609(a)(2) and (e) and the Defendant's issue is with the Rule, not the ruling. Furthermore, as the Defendant introduced the convictions during direct examination, he waived the right to challenge their admission. In addition, a later vacating of convictions is an awkward fit for a Rule 33(b) motion and, in any event, as only two, not all four, false statement convictions were vacated, the admission, if error, was harmless. Finally, the Court rejects the Defendant's contention that by admitting his statements to the officer who arrested him for the false statement charges, the Court committed legal error.

## I. BACKGROUND[1]

### A. False Statement Convictions and Appeal

On September 15, 2010, in a six-count indictment, a federal grand jury indicted Rodney W. Russell for making false statements in connection with a health care benefit program. *United States v. Russell*, 1:10-cr-00149-JAW, *Indictment* (ECF No. 3). On April 28, 2011, Rodney Russell was convicted of four counts of making a false statement in connection with a health care benefit program, in violation of 18 U.S.C. § 1035(a)(2). *Id. Jury Verdict* (ECF No. 78). On March 9, 2012, Mr. Russell appealed his convictions to the Court of Appeals for the First Circuit. *Id. Notice of Appeal* (ECF No. 138). On August 26, 2013, the First Circuit affirmed Mr. Russell's four convictions. *United States v. Russell*, 728 F.3d 23 (1st Cir. 2013). On November 11, 2013, Mr. Russell filed a petition for writ of certiorari with the United States Supreme Court. *Russell v. United States*, 728 F.3d 23 (1st Cir. 2013), *petition for cert. filed*, (U.S. Nov. 11, 2013) (No. 13-7357).

### B. New Charges and New Convictions

Meanwhile, on September 14, 2012, a federal grand jury indicted Mr. Russell for a separate set of federal crimes, *Indictment* (ECF No. 2), and on November 13, 2013, a grand jury issued a superseding indictment against Mr. Russell and other Defendants for conspiracy to manufacture 1,000 or more marijuana plants, manufacturing 1,000 or more marijuana plants, maintaining a drug-involved place,

---

[1] The Court's general ECF docket entry references in this Order are to docket number 1:12-cr-00160-JAW-2. If the reference is to an ECF docket entry in 1:10-cr-00149-JAW, which relates to Mr. Russell's false statement convictions, the Court notes it.

2

harboring illegal aliens, and conspiracy to distribute and possess with the intent to distribute marijuana. *Superseding Indictment* (ECF No. 187). The case went to trial from January 8, 2014 through January 24, 2014, and on January 24, 2014, a federal jury issued a verdict, convicting Mr. Russell of conspiracy to manufacture 1,000 or more marijuana plants, manufacturing 1,000 or more marijuana plants, two counts of using or controlling a drug-involved premises, three counts of harboring illegal aliens, and conspiracy to distribute marijuana. *Jury Verdict Form* (ECF No. 311).

### C. False Statements: A Surprising Appellate Turn

Turning back to the false statement convictions, the petition for writ of certiorari took a surprising and unconventional turn. Despite a circuit split, on March 10, 2014, the Solicitor General filed a confession of error with the United States Supreme Court, effectively conceding that the First Circuit and other similar circuits had erred. *Br. for the United States in Opp'n*, *Russell v. United States*, 134 S. Ct. 1872 (2014) (No. 13-7357), 2014 WL 1571932, at *6-19. On April 21, 2014, the United States Supreme Court issued the following opinion:

> On petition for writ of certiorari to the United States Court of Appeals for the First Circuit. Motion of petitioner for leave to proceed *in forma pauperis* and petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the First Circuit for further consideration in light of the confession of error by the Solicitor General in his brief for the United States filed on March 10, 2014. Justice Scalia would deny the petition for writ of certiorari.

*Russell v. United States*, 134 S. Ct. 1872 (2014).

### D. The First Circuit Affirms and Vacates the False Statement Convictions and this Court Resentences Rodney Russell

3

Following receipt of the Supreme Court mandate, the First Circuit issued an order on remand on May 20, 2014. *United States v. Russell*, 1:10-cr-00149-JAW, *J.* (ECF No. 160). In its Order, the First Circuit concluded that as to Counts 2 and 4 of the indictment, the "evidence of 'bad purpose' as to those counts is overwhelming and so the error is harmless beyond a reasonable doubt." *Id.* at 1. As to the convictions for Counts 3 and 5, the First Circuit could not "say beyond a reasonable doubt that the instructional error was harmless." *Id.* The First Circuit therefore affirmed the false statement convictions on Counts 2 and 4 and vacated the convictions on Counts 3 and 5, remanding those counts for further proceedings consistent with its Order. *Id.* at 2.

Mr. Russell challenged the First Circuit ruling. On June 6, 2014, he filed a petition for rehearing en banc; the First Circuit denied that petition on June 20, 2014. On July 2, 2014, the First Circuit issued its mandate. *United States v. Russell*, 1:10-cr-00149-JAW, *Mandate* (ECF No. 173). Mr. Russell filed another petition for writ of certiorari with the Supreme Court on September 2, 2014. On October 14, 2014, the Supreme Court rejected the new petition for writ of certiorari. *Russell v. United States*, *cert. denied*, 135 S. Ct. 386 (2014).

While being resolved at the Supreme Court level, the case continued at district court. After receipt of the First Circuit's Judgment, on July 2, 2014, the Government moved to dismiss Counts three and five of the indictment in the false statements case. *United States v. Russell*, 1:10-cr-00149-JAW, *Gov't's Mot. to Dismiss Counts Three and Five of the Indictment* (ECF No. 172). On August 20, 2014, the Court granted

4

the Government's motion. *Id. Order* (ECF No. 179). On November 13, 2014, after the Supreme Court ruled against Mr. Russell on his second petition for writ, this Court resentenced Mr. Russell on the remaining two counts, re-imposing the same term of incarceration of five months (which Mr. Russell had already served), lowering the fine from $5,000.00 to $2,861.00, and reducing the special assessment from $400.00 to $200.00. *Compare id. J.* (ECF No. 136), *with Am. J.* (ECF No. 185).

E.     **The January 2014 Trial and the False Statement Convictions**

   1.     **January 22, 2014 Sidebar**

In January 2014, after the First Circuit decision and before the Supreme Court remand, Mr. Russell and several other Defendants went to trial on the second set of charges. After the Government rested, counsel for Mr. Russell approached sidebar and addressed whether, if he testified, he would be subject to impeachment from the four prior false statement convictions. *Partial Tr. of Proceedings* (ECF No. 381) (*Sidebar Tr.*). Knowing that the First Circuit opinion was on appeal, his defense counsel objected to impeachment based on those four convictions on the ground that "it's not a final conviction." *Id.* 2:18-19.

Noting that Federal Rule of Evidence 609(e) addresses how to handle an appealed conviction, the Court observed that under the Rule, the conviction does not have to be final and evidence of the pendency of the appeal would also be admissible. *Id.* 2:20-3:5. Defense counsel asked whether it was just the fact of the convictions that would be admissible or whether the facts underlying the convictions would also be admissible. *Id.* 3:15-17. The Court ruled that only the fact of the convictions would

5

be admissible unless Mr. Russell generated further questioning by his testimony. *Id.* 3:18-4:4. Mr. Russell elected to testify. *Id.* 4:10.

### 2. Rodney Russell's Trial Testimony Regarding the Prior Convictions

During Mr. Russell's testimony, defense counsel elicited the following regarding prior convictions:

Q. Now, Mr. Russell, just in the way of background, you've been to trial once before on another case, correct?

A. Yes.

Q. And were you charged with a criminal offense?

A. Yes.

Q. And what was the charge?

A. Um, health insurance fraud for zero dollars.

Q. And you went through to trial?

A. Yes.

Q. And were you convicted for that offense?

A. Yes.

Q. And when was that?

A. Um, April of 2011.

Q. After that conviction, did you appeal the conviction?

A. Yes.

Q. And is that appeal still pending?

A. Yes, it is.

> Q. And do you know what court it's in front of right now?
>
> A. Um, the appeal is before the Supreme Court.
>
> Q. It's not at - - in the Supreme Court. It's - -
>
> A. Not yet.
>
> Q. - - waiting.
>
> A. Waiting, correct.

*Partial Tr. of Proceedings* 44:11-45:8 (ECF No. 364) (*Trial Tr.*).

On cross-examination, the prosecutor questioned Mr. Russell about the convictions:

> Q. Mr. Russell, the actual offense that you were convicted of was making false statements relating to healthcare matters, correct?
>
> A. Correct.
>
> Q. All right. And you were convicted of four counts, four false statements?
>
> A. Correct.

*Id.* 47:21-48:2. Later during Mr. Russell's cross-examination, the prosecutor brought up the prior convictions again:

> Q. On October - - September 16th, 2010, you were arrested by Special Agent Richards on that false statement case - -
>
> A. Yes.
>
> Q. - - that we talked about.
>
> A. Yes.

7

Q. And at the time of your arrest on September 16, 2010, you knew at that time that you were a suspect in the Township 37 grow.

A. I didn't know that.

Q. You didn't know that?

A. No.

Q. Okay. When - - I thought that you testified on direct examination that when Mr. Richards came to your house in October of 2009 asking you about Township 37, you thought, oh, gosh, they're looking at me for this thing now.

A. I thought it was possible. They had just tackled Scott a couple weeks before.

Q. So in October of 2009, while you didn't have confirmation, you were - - you suspected that maybe you were being looked at for the grow?

A. It's possible.

Q. That's what you told Mr. Peterson on direct examination, right?

A. That it's possible.

Q. And so in September of 2010 when Mr. Richards contacted you by phone and talked to you about having an arrest warrant for you - -

A. I contacted him, but, yes.

Q. Well, there was some phone tag going on?

A. Just one tag, me to him.


8

Q. So he had called Rhonda,[2] and then you called him.

A. Right.

Q. Okay. When you talked to him on the phone, you told him that you'd never talk about your friends.

A. I told him I would never speak with him, period.

Q. Okay. You told him that you could be sent to jail for the rest of your life and you'd never talk about your friends.

A. After the way he treated my wife, that's what I said.

*Id.* 78:16-80:3.

## II. THE PARTIES' POSITIONS

### A. Rodney Russell's Position

In support of his motion for new trial, Mr. Russell cites a Fourth Circuit case, *United States v. Russell*, 221 F.3d 615 (4th Cir. 2000), in which the circuit court vacated a defendant's conviction where the defendant's "'credibility . . . was irrevocably undermined by his improper impeachment with . . . two vacated convictions.'" *Def.'s Mot. to Vacate Conviction and Mot. for New Trial (F.R. Crim. P. 33(a))* at 3 (quoting *Russell*, 221 F.3d at 622) (ECF No. 441) (*Def.'s Mot.*). Mr. Russell acknowledges that the two cases are different because the Fourth Circuit case involved convictions that had been vacated at the time of trial and this case involved convictions under appeal that were later vacated. *Id.* Nevertheless, Mr. Russell argues that "[i]n both cases, the jury was presented with two erroneous convictions.

---

[2] At the time of the trial Rhonda Russell was Mr. Russell's wife. *Trial Tr.* 3:22-4:2.

9

In the first instance, the convictions were erroneous when presented to the jury and in the present instance, the convictions became erroneous three months after trial." *Id*. Mr. Russell points to the Fourth Circuit's compunctions about admitting evidence of prior convictions, worrying that evidence of previous convictions "'often has a prejudicial impact beyond its proper purpose of impeachment.'" *Id*. (quoting *Russell*, 221 F.3d at 622).

In addition to evidence of the prior, later vacated convictions, Mr. Russell complains that the prosecutor "inextricably intertwined those convictions with defendant's guilt by telling the jury that when the Agent executed an arrest warrant on that prior matter, the defendant stated he did not want to talk about his friends on the present matter and be sent to jail for the rest of his life." *Id*. at 5. Mr. Russell asserts that the prosecutor "linked the prior convictions, since over-turned, with defendant's guilt on the present matter." *Id*.

Mr. Russell also claims that the prosecutor must have known that the Solicitor General had requested "not one but two extensions of time to file a response to defendant's Petition for a Writ of Certiorari," and therefore, the prosecution "likely saw the writing on the wall when creating this risk." *Id*.

### B. The Government's Opposition

The Government first argues that evidence of a later vacated conviction is not "newly discovered evidence" within the meaning of Rule 33(b). *Gov't's Objection to the Def.'s Mot. for New Trial* at 4-7 (ECF No. 454) (*Gov't's Opp'n*). To be newly discovered, the evidence, the Government says, "must have been in existence at the

time of trial." *Id.* at 5. Here, the Government points out, all four convictions were still convictions as of the date of trial and events that arise after trial—such as the vacating of these convictions—do not constitute newly discovered evidence. *Id.* at 6-8.

Furthermore, noting that it was defense counsel who elected to present evidence of the prior convictions to the jury during direct examination, the Government contends that the Defendant may not now complain about his own strategic decision. *Id.* at 6.

The Government also disputes the applicability of the Fourth Circuit decision in *United States v. Russell*, observing that in the Fourth Circuit case, defense counsel had failed to confirm the validity of the convictions and, as it turned out, they had been vacated before trial. *Id.* at 8. As such, the Government argues, the vacated convictions should never have been admitted at all at the trial, unlike the case at hand. *Id.*

Finally, the Government is skeptical that evidence of two, not four, prior false statement convictions would have made any difference in the verdicts in this case. *Id.* at 9.

## III. DISCUSSION

### A. Admissibility of the Convictions

Absent the question of the admissibility of appealed convictions, the four convictions in this case were clearly admissible for impeachment purposes. Rule 609(a)(2) provides:

> (a) **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

FED. R. EVID. 609(a)(2). Here, Mr. Russell had been convicted of making a false statement in connection with a health care benefit program, in violation of 18 U.S.C. § 1035(a)(2). Section 1035(a)(2) provides:

> Whoever, in any matter involving a health care benefit program, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statements or representations . . . in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a)(2). A conviction under § 1035(a)(2) for making false statements relating to health care matters fits within the provisions of Rule 609(a)(2) providing for the mandatory admission of a prior conviction for a false statement. *See United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (conviction for making sworn false statement to government official is "obviously a crime of dishonesty and false statement by virtue of its title alone"). Once the prior conviction fits within Rule 609(a)(2), the Court lacks the discretion to exclude it. *Starski v. Kirzhnev*, 682 F.3d 51, 53 (1st Cir. 2012); *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000); *United States v. Tracy*, 36 F.3d 187, 192 (1st Cir. 1994); *United States v. Swan*, No. 1:12-cr-00027-JAW-01, 2013 U.S. Dist. LEXIS 131481, at *12-13 (D. Me. Sept. 9, 2013); *United States v. Carey*, No. CR-08-157-B-W-02, 2009 U.S. Dist. LEXIS 15736, at *4 (D. Me. Feb. 26, 2009). Mr. Russell makes no argument to the contrary.

## B. Admissibility of Convictions Pending Appeal

Rule 609(e) addresses the admissibility of a conviction pending appeal:

> A conviction that satisfies this rule is admissible even if an appeal is pending. Evidence of the pendency is also admissible.

FED. R. EVID. 609(e). Under this Rule, evidence of Mr. Russell's convictions was admissible even though the convictions were on appeal. *Id.* At the same time, the fact that the convictions were being challenged on appeal was admissible as well. *Id.* The Advisory Committee on Evidence Rules explained that this part of the Rule is based on the "presumption of correctness which ought to attend judicial proceedings." *Id.* advisory committee's note (1972 Proposed Rules). Courts of appeals have consistently upheld the admission of appealed convictions so long as the defendant is given an opportunity to explain that the convictions are being challenged on appeal. *See, e.g., In re Slodov*, 849 F.2d 610 (6th Cir. 1988); *United States v. Klayer*, 707 F.2d 892, 895 (6th Cir. 1983); *United States v. Rose*, 526 F.2d 745, 747 (8th Cir. 1975); 4 JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. SECOND ED. § 609.03[4] (2d ed. 2014) (WEINSTEIN'S). Here, Mr. Russell makes no claim that the Court's trial ruling failed to comply with the provisions of Rule 609(e).

## C. Vacated Convictions as Grounds for New Trial

The Court turns to the heart of Mr. Russell's argument: that later vacating of convictions properly admitted at trial for impeachment purposes under Rule 609(a)(2) is a ground for a new trial. Mr. Russell offered no caselaw to support this theory and the Court found none.

13

The one case Mr. Russell cites for support is the Fourth Circuit case of *United States v. Russell*. But *Russell* is inapposite because—unlike this case—the convictions used to impeach the defendant in *Russell* had been vacated at the time of trial. This Court has no quarrel at all with the Fourth Circuit's unassailable view that if the prior convictions were vacated at the time of a defendant's trial, the convictions were inadmissible to attack his credibility at trial. But *Russell* offers no authority for Mr. Russell's next proposition that if the convictions were properly admitted at trial, the later vacating of the convictions is grounds for a new trial. At bottom, Mr. Russell really just does not like Rule 609(e), which allows for the admission of convictions on appeal so long as a defendant is allowed to explain that the convictions are not final. But his argument is with the Rule, not the ruling.

Furthermore, Mr. Russell waived the right to challenge the admissibility of the convictions by testifying to them on direct examination. Under Supreme Court authority, once an earlier ruling is obtained admitting into evidence a prior conviction, if a defendant elects to present evidence of the conviction during direct examination, the defendant waives the right to later claim its admission was in error. *Ohler v. United States*, 529 U.S. 753 (2000). In *Ohler*, the district court granted the Government's motion in limine seeking to admit evidence of a defendant's prior felony conviction as impeachment evidence. *Id.* at 754. The defendant "testified at trial and admitted on direct examination that she had been convicted of possession of methamphetamine." *Id.*

14

When the defendant challenged the admission of this evidence on appeal, the Supreme Court held:

> [W]e conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was in error.

*Id.* at 760; *see also United States v. Gaston*, 509 Fed. Appx. 158, 159-60 (3d Cir. 2013) ("On direct examination, Gaston preemptively admitted to one of the felony drug crimes. Gaston concedes that he has waived the right to object to the introduction of this crime"); *United States v. Gonzalez-Cavazos*, 554 Fed. Appx. 310, 310 (5th Cir. 2014) ("[A] defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error") (internal citations and quotation marks omitted); *Clarett v. Roberts*, 657 F.3d 664, 670 (7th Cir. 2011) ("[C]riminal defendants who introduce evidence of their own prior convictions in an effort to remove the 'sting' forgo the right to appeal the trial court's decision to admit those convictions into evidence"); *United States v. El-Alamin*, 574 F.3d 915, 926 (8th Cir. 2009); *United States v. Weicks*, 362 Fed. Appx. 844, 849 (9th Cir. 2010); *United States v. Wagoner Cnty. Real Estate*, 278 F.3d 1091, 1099 (10th Cir. 2002); *United States v. Young*, 574 Fed. Appx. 896, 900 n.4 (11th Cir. 2014); 1 WEINSTEIN'S § 103.14. The *Ohler* rule applies here. Mr. Russell elected to admit the four convictions during his direct testimony. He has waived the right to claim error from the admission of evidence that he presented.

In addition, the notion that a later vacated conviction may form the basis of the Rule 33(b) motion is at least an awkward fit with the newly-discovered evidence requirements of the Rule. *See* FED. R. CRIM. P. 33(b)

Finally, even if the Court were to accept Mr. Russell's view that the admission of his later vacated convictions could be error and could be raised by a Rule 33(b) motion, the fact is that not all of the convictions were vacated. The First Circuit vacated only two of the four false statement convictions and affirmed the remaining two. Thus, even if the issue were properly raised, Mr. Russell would still have to convince this Court that the admission of evidence of four, not two, false statement convictions made a difference in his second trial. The "sting" of the convictions for purposes of his credibility was that he had been convicted of making any false statements at all. It is difficult to conclude that it mattered whether the number of false statement convictions was two or four. Thus, even assuming the introduction of evidence of four, not two, convictions was error, which the Court concludes it was not, the Court deems any such error to have been harmless.

**D. The Arrest Evidence**

Mr. Russell does not adequately explain why his testimony about the circumstances surrounding his arrest on the false statement case should be considered legal error. As noted earlier, Mr. Russell complains that the prosecutor "inextricably intertwined those convictions with defendant's guilt by telling the jury that when the Agent executed an arrest warrant on that prior matter, the defendant stated he did not want to talk about his friends on the present matter and be sent to

16

jail for the rest of his life."[3] *Def.'s Mot.* at 5. Mr. Russell further asserts that the prosecutor "linked the prior convictions, since over-turned, with defendant's guilt on the present matter." *Id.*

But it was on direct examination that Mr. Russell raised the visit to his home in October 2009 by law enforcement, during which they asked questions about the Township 37 grow. *Trial Tr.* 38:6-39:5 ("They wanted to know if I knew anything about the Township 37 grow"). Mr. Russell was also asked on direct examination about whether Agent Richards, the officer who had come to his home in October 2009, ever returned, and he responded that Agent Richards had returned in February 2011. *Id.* 40:19-24 (Q. "[W]ere you visited down there at all by law enforcement?" . . . A. "Agent Richards and Agent Weaver came to collect DNA I want to say 2011, February 2011").

On cross-examination, the prosecutor following up this testimony, reminding Mr. Russell that Agent Richards actually visited him on September 16, 2010 to arrest him on the false statements case. *Id.* 78:7-20. This line of questioning was not objected to, nor should it have been, because it had been opened up by Mr. Russell's testimony on direct examination about his false statement convictions and about the October 2009 and February 2011 law enforcement visits. Once Mr. Russell asserted to the jury that Agent Richards had visited him in October 2009 and February 2011,

---

[3]   This statement mischaracterizes Mr. Russell's actual testimony. Mr. Russell agreed with the prosecutor's statement that "[y]ou told him that you could be sent to jail for the rest of your life and you'd never talk about your friends." *Trial Tr.* 80:1-3. This means that no matter what the punishment, he would not implicate his friends. The motion states that he "did not want to talk about his friends on the present matter and be sent to jail for the rest of his life." *Def.'s Mot.* at 5. This means that if he implicated his friends, he might face life imprisonment.

17

the prosecutor had the right to remind him that Agent Richards had actually returned to his home in October 2010. Furthermore, it is difficult to understand the prejudice; once the jury learned during direct examination that Mr. Russell had been convicted of a crime, it would have come as no surprise that he had been arrested for it.

The prosecutor also had the right to follow up on his direct testimony about the October 2009 visit by Agent Richards during which he was asked questions about the Township 37 grow. The prosecutor asked Mr. Russell whether in October 2009, he thought he was being investigated for the Township 37 grow and Mr. Russell conceded that he thought it was "possible." *Id.* 79:2-14. Then, using the September 16, 2010 arrest to trigger Mr. Russell's memory, the prosecutor asked Mr. Russell whether—when he spoke with Agent Richards about the false statements arrest warrant, he told Agent Richards that he would never talk about his friends. *Id.* 79:15-80:3. Mr. Russell freely acknowledged that he had told Agent Richards that "I would never speak with him, period" and Mr. Russell also agreed that he told Agent Richards that "[I] could be sent to jail for the rest of [my] life and [I'd] never talk about [my] friends." *Id.* None of this questioning, either on direct or cross-examination, links Mr. Russell's prior convictions with his guilt for the then-pending charges. The prosecutor never suggested that because Mr. Russell committed the false statement offenses, he must have committed the pending offenses. Instead, the prosecutor clarified a misimpression created by Mr. Russell himself on direct examination about the number of meetings he had with Agent Richards and the prosecutor elicited a

18

statement about Mr. Russell's determined loyalty to his friends for the jury's consideration in evaluating his credibility. None of this evidence was objected to by Mr. Russell and none of it should have been, because it was properly admissible.

## IV. CONCLUSION

The Court DENIES Defendant Rodney Russell's Motion to Vacate Conviction and Motion for New Trial (ECF No. 441).

SO ORDERED.

<div style="text-align:right">
/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE
</div>

Dated this 28th day of January, 2015